```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

SUZIE GOODWYN,                      *

      Plaintiff,                    *

vs.                                 *
                                        CASE NO. 4:14-CV-219 (CDL)
CAPITAL ONE, N.A., and UNITED       *
RECOVERY SYSTEMS L.P.,
                                    *
      Defendants.
                                    *
```

### O R D E R

Plaintiff Suzie Goodwyn borrowed money from Defendant
Capital One, N.A. to buy a car.  She later experienced financial
difficulties and sought protection under Chapter 13 of the
federal bankruptcy laws.  The bankruptcy judge approved a
payment plan that provided for the full payment of her principal
owed to Capital One plus interest, although the interest was
less than the amount she contracted to pay in her original
financing agreement with Capital One.  Goodwyn paid all that she
was required to pay under the bankruptcy plan, but she did not
receive a formal discharge because she had previously obtained a
discharge in an earlier Chapter 7 bankruptcy proceeding.

Although Capital One did not object to its treatment during
the Chapter 13 proceeding, it claims that Goodwyn still owes
interest at the original agreed-upon rate.  And after the
Chapter 13 proceeding concluded, Capital One sought to collect

the unpaid interest, retaining Defendant United Recovery Systems, L.P. as its collection agent. Goodwyn disputes that she owes Capital One anything and argues that Capital One accepted the Chapter 13 plan by failing to object to it. Goodwyn contends that when she made payments complying with the bankruptcy plan, her debt to Capital One was extinguished. Consequently, she maintains that Defendants' continued attempts to collect the debt violate various federal and state laws that provide her with a private cause of action against them.

Goodwyn asserts a claim against Capital One under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* She also alleges state law claims against Capital One for breach of contract, conversion, intentional infliction of emotional distress, negligence *per se*, violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.*, and the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO"), O.C.G.A. § 16-14-1, *et seq.* Goodwyn asserts claims against United Recovery under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* And she alleges state law claims against United Recovery for intentional infliction of emotional distress, negligence *per se,* and Georgia RICO.

Defendants filed motions for summary judgment (ECF Nos. 45 & 49), arguing that each of Goodwyn's claims fails because it is undisputed that Goodwyn owed the alleged debt. As explained in

2

the remainder of this Order, however, the present record does not establish as a matter of law that Goodwyn owed the alleged debt.  Defendants are thus not entitled to summary judgment as to Goodwyn's claims under the Fair Credit Reporting Act or sections 1692e(2)(A), 1692e(10), and 1692f(1) of the Fair Debt Collection Practices Act.  Summary judgment is also not appropriate on Goodwyn's state law claims for breach of contract, conversion, negligence, and violation of the Georgia Fair Business Practices Act.  The Court does find, however, that the present record does not contain sufficient evidence to support Goodwyn's claims for intentional infliction of emotional distress, Georgia RICO, or liability under sections 1692e(8) and 1692g(b) of the Fair Debt Collection Practices Act. Consequently, summary judgment is granted as to those claims.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant

or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

With all reasonable inferences construed in Goodwyn's favor, the record establishes the following.

Goodwyn purchased a 2008 Chevrolet Impala from Bill Heard Chevrolet on July 16, 2008.  Bill Heard loaned Goodwyn $16,504.61 for the purchase at an interest rate of 20.51%.  The loan required 72 monthly payments of $452.25.  Bill Heard assigned its rights in the loan to Capital One.

On November 25, 2008, Goodwyn filed a Chapter 13 bankruptcy petition.  She listed Capital One as a secured creditor holding a lien on her car.  Goodwyn's bankruptcy plan provided that she owed Capital One $18,388 and would pay a 6% interest rate, for 60 monthly payments of $432.00.  Ascension Capital Group, a vendor for Capital One, filed a sworn proof of claim listing Goodwyn's debt as $18,666.44 at a 20.51% interest rate.  A bankruptcy judge confirmed the plan with the 6% interest rate, and Goodwyn completed the plan on September 21, 2012.  She was not eligible for and did not receive a discharge from the Chapter 13 bankruptcy because of a 2005 Chapter 7 bankruptcy. On November 7, 2012, the Chapter 13 trustee filed a report with the bankruptcy court stating that Goodwyn made all payments

4

according to the plan but was ineligible to receive a discharge. The bankruptcy court ordered that Goodwyn's Chapter 13 case be closed on February 19, 2013.  Capital One, however, refused to send Goodwyn the title to her car.

According to Capital One, Ascension Capital Group notified it on January 6, 2014 that Goodwyn had not received a discharge and thus her account was subject to collection.  Capital One Dep. 61:22-62:5, ECF No. 42.  Capital One then began the process of re-applying payments Goodwyn made during the bankruptcy in accordance with the terms of the original contract, which contained the 20.51% interest rate instead of the 6% rate approved by the bankruptcy judge for the Chapter 13 plan.  That process resulted in a loan balance of $9,876.98.

On February 5, 2014, Capital One wrote Goodwyn that her account was past due in the amount of $7,899.18 and her car would be repossessed if she did not pay.  Goodwyn called Capital One and asked that it send her the title to her vehicle because she paid off her loan in the Chapter 13 bankruptcy.  Capital One responded that her loan had not been paid off and that the vehicle was subject to repossession now that the bankruptcy proceeding was closed.  Capital One repossessed Goodwyn's car on February 25, 2014 and sold it for $8,500.  It stopped applying interest to Goodwyn's account after the repossession.  On March 24, 2014 Capital One sent Goodwyn a letter setting forth its

accounting of proceeds and expenses from the sale and stating
that she owed a deficiency balance of $5,237.88.  Capital One
referred Goodwyn's debt to United Recovery for collection.
United Recovery wrote Goodwyn that it would be collecting the
$5,237.88 Capital One said she owed.  Goodwyn responded that she
did not owe the debt.

Goodwyn claims that because of the repossession and
collection attempts, she has trouble sleeping and eating and has
recurring thoughts of her car being taken.  Goodwyn seeks
damages based on Defendants' alleged conduct arising from the
collection of a debt she claims she did not owe.

DISCUSSION

Defendants contend that although Goodwyn complied with the
terms of her Chapter 13 plan, she still owed the debt based on
the terms of her original borrowing agreement with Capital One.
Goodwyn responds that her debt was extinguished when she
completed her payments under the Chapter 13 plan.  The first
issue the Court must decide is the effect of her Chapter 13 plan
on the debt.

## I.   Capital One Accepted Goodwyn's Chapter 13 Plan

It is undisputed that Goodwyn did not receive a formal
discharge after she completed her Chapter 13 plan.  But that
fact is not dispositive of whether her debt was extinguished
when she successfully completed the plan.  The central issue is

6

whether Capital One accepted the plan.  If it did, then it cannot maintain that the debt is still owed after the plan has been approved and completed because the debtor and lienholder can agree to a debtor's proposed treatment of a lien under 11 U.S.C. § 1325(a)(5)(A).[1]  Capital One acknowledges that it did not file a formal objection to the plan during the Chapter 13 proceeding, and it provided no reason for failing to do so. Instead, Capital One argues that by filing a proof of claim for the full amount of the debt at the 20.51% interest rate, which was contrary to the terms of Goodwyn's bankruptcy plan, Capital One objected to the plan and thus retained its lien under 11 U.S.C. § 1325(a)(5)(B).  Capital One further contends that because it retained its lien, it could exercise its collection rights, including repossession of the collateral.

The Court must decide this purely legal issue:  Does the filing of the proof of claim alone constitute an objection such that Capital One shall not be deemed to have accepted the plan? The Court finds it does not.  A Chapter 13 debtor must file a

---

[1] Defendants contend that without a discharge, any modification of Goodwyn's debt does not survive bankruptcy.  In support of this assertion, Defendants cite *Colbourne v. Ocwen* (In re *Colbourne*), 550 F. App'x 687, 687 (11th Cir. 2013) (per curiam).  In *Colbourne*, the creditors *objected to* the debtor's motion to value their claims based on the current appraised value of the real properties rather than amount outstanding on the mortgages.  The bankruptcy court denied the motion (and the Eleventh Circuit affirmed) because the debtor was ineligible for discharge and the creditor objected to the cram down. But *Colbourne* says nothing about the issue for the Court in this case: whether a loan modification *accepted by* a creditor survives bankruptcy.

debt repayment plan with the bankruptcy court. 11 U.S.C.
§ 1321. Creditors may then file a "proof of claim." 11
U.S.C. § 501(a). The proof of claim will be deemed allowed
unless a party in interest objects to the claim. 11 U.S.C.
§ 502(a). The bankruptcy court holds a hearing on confirmation
of the plan. During or before the hearing, a party in interest
may object to confirmation. 11 U.S.C. § 1324(a). Capital One
did not object to confirmation of Goodwyn's plan.

Goodwyn's bankruptcy plan provided that secured creditors
"shall retain their liens as provided in 11 U.S.C.
§ 1325(a)(5)." Mot. to Dismiss Ex. A, Chapter 13 plan
¶ 2(k)(c), ECF No. 12-2. Section 1325(a)(5) states that a
plan's treatment of an allowed secured claim will be confirmed
if (A) the creditor accepts the plan; (B) "the plan provides
that the holder of such claim retain the lien securing such
claim until the earlier of the payment of the underlying debt
determined under nonbankruptcy law; or discharge under section
1328;" OR (C) the debtor surrenders the property to the
creditor. 11 U.S.C. §§ 1325(a)(5)(A)-(C). Capital One argues
that Goodwyn attempted to "cram down" its claim with a plan that
did not provide for full payment of Capital One's claim—and that
Capital One did not expressly agree to the plan. Therefore,
Capital One maintains that § 1325(a)(5)(B) applies, which
authorizes a creditor to retain its lien rights until the full

payment of the underlying debt or until the debtor receives a discharge.   Since Goodwyn never received a discharge due to her ineligibility for one, Capital One argues that it retained its lien rights even after the Chapter 13 proceeding concluded because the underlying debt was not paid in full during that proceeding. Goodwyn argues that § 1325(a)(5)(B) does not apply here because Capital One accepted the Chapter 13 plan and therefore § 1325(a)(5)(A) applies, which means that the debt is extinguished as long as the debtor's Chapter 13 plan is confirmed and the debtor completes the plan.   The Court finds Goodwyn's argument persuasive.

"If a creditor is unhappy with its treatment under the plan, it must take some affirmative action to timely communicate its opposition."   *In re Castleberry*, 437 B.R. 705, 708-09 (Bankr. M.D. Ga. 2010) (collecting cases in support of the general rule that "a secured creditor's failure to object to a Chapter 13 plan may constitute its acceptance of the plan."). Capital One points to *In re Bateman*, in which the court found that the creditor, "by filing a proof of claim contrary to the amount indicated in [the debtor's] first plan, did not indicate its acceptance of the plan to the detriment of its lien by declining to further participate in the confirmation proceedings."   "Because there was no objection to the proof of claim, [the creditor] did not need to act further and the claim

was 'deemed allowed.'" *Id.* Capital One thus argues that under *Bateman*, § 1325(a)(5)(B) applies, and it was entitled to retain its lien until "the payment of the underlying debt determined under nonbankruptcy law." 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa). But *Bateman* limits its holding to cases involving real property subject to the anti-modification provision of 11 U.S.C. § 1322(b)(2). *Bateman*, 331 F.3d at 825 n.4 ("We decide this case within the context of the special treatment afforded mortgage lenders by § 1322(b)(2) and do not express an opinion as to the result with regard to a general secured creditor.").

Moreover, the applicable local bankruptcy rules make it clear that "[t]he values set by the debtors in their Chapter 13 plans may be adopted by the Court, unless a written objection is filed by the holder of the secured claim, and evidence concerning value is presented by the holder of the claim at the confirmation hearing. *Any allegation of value contained in a proof of claim filed by a creditor shall not be deemed an objection to the debtor's valuation*." Bankr. M.D. Ga. R. 3012-1(a) (emphasis added). The Court is convinced that Capital One's mere filing of its proof of claim did not constitute an objection to the confirmation of the Chapter 13 plan. By failing to object and by receiving payments under the plan that

fully paid the principal amount of the debt plus a reasonable interest rate, Capital One accepted the plan.[2]

Since Capital One accepted Goodwyn's bankruptcy plan, the plan could permanently modify her debt. Section 1322(b)(2) allows for modification of rights to creditors, and a "debtor who is not entitled to a discharge may still permanently modify a loan in a bankruptcy plan." *Capital One Auto Fin. Inc. v. Bolden* (In re *Bolden*), No. 12-14979, 2013 WL 3897048, at *4 (E.D. Mich. July 29, 2013). "Because the no-discharge case is closed without discharge, rather than dismissed, the code sections that reverse any lien avoidance actions . . . upon conversion or dismissal are not implicated, and, thus, do not act to prevent the permanence of the lien avoidance." *In re Okosisi*, 451 B.R. 90, 100 (Bankr. D. Nev. 2011) (citing 11 U.S.C. § 349(b)(1); *Dewsnup v. Timm*, 502 U.S. 410, 417-18 (1991)). Thus, a completed Chapter 13 plan retains its binding effect after a case is closed without discharge. *Id.* So once

---

[2] At the hearing on the summary judgment motion, Capital One suggested that it cannot be deemed to have accepted Goodwyn's plan because she took out the car loan within the 910-day period preceding the filing of her bankruptcy petition. Based on the "910 Rule," a bankruptcy plan cannot bifurcate a secured creditor's claim into a secured claim equal to the actual value of the car and an unsecured claim for the remainder. *See, e.g., Castleberry*, 437 B.R. at 708. Here, though, there is no indication that the plan proposed bifurcating Capital One's claim into a secured claim and an unsecured claim or that the bankruptcy court intended to bifurcate the claim. *See generally* Chapter 13 Plan; Order Confirming Plan, ECF No. 17 in Case No. 08-41298 (Bankr. M.D. Ga. Mar. 5, 2009). The 910 Rule does not mean that Capital One cannot accept a plan that modifies its interest rate. *See Castleberry*, 437 B.R. at 708.

Goodwyn completed her Chapter 13 plan and her case was closed without discharge, "the provisions of the plan bec[a]me permanent, and the lien [modification] is, similarly, permanent." *Id.* at 100; *Monroe v. Seaway Bank & Trust Co.* (In re *Monroe*), 509 B.R. 613, 629 (Bankr. E.D. Wis. 2014). The next issue is whether Goodwyn's claims remain viable given that she did not owe the debt that Defendants collected.

## II. Fair Credit Reporting Act Claim

Goodwyn claims that Capital One violated Section 1681s-2(b) of the Fair Credit Reporting Act by failing to conduct a proper investigation into her dispute with consumer reporting agency Equifax regarding Capital One's credit reporting of her repossession. Section 1681s-2(b) requires furnishers of credit information who are on notice of a dispute to conduct an investigation with respect to the disputed information, review all relevant information provided by the consumer reporting agency, and report the results of the investigation to the consumer reporting agency. The furnisher's investigation must be reasonable, and summary judgment is only appropriate "if the reasonableness of the [furnisher's] procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (11th Cir. 2005); *accord Howard v. Pinnacle Credit Servs., LLC*, No. 4:09-CV-85 (CDL), 2010 WL 2600753, at *3 (M.D. Ga. June 24, 2010).

Goodwyn gave Capital One notice of her dispute by stating on her Equifax dispute form (and in subsequent letters and phone calls) that she had paid her car loan in full. Capital One received Goodwyn's dispute notice, reviewed its records, and researched the disposition of Goodwyn's bankruptcy. Capital One determined that Goodwyn's Chapter 13 bankruptcy had been *dismissed* (thus essentially vacating the Chapter 13 plan) and that the amount it reported was accurate because Goodwyn had not paid the debt in full. Capital One Dep. 99:15-22, 104:5-8. But Goodwyn's bankruptcy was closed after being fully administered and was *not* dismissed, so the Court cannot conclude as a matter of law that Capital One's investigation was unquestionably reasonable. The Court thus denies summary judgment on this claim.

**III. Fair Debt Collection Practices Act Claims**

Goodwyn alleges that United Recovery violated: (1) 15 U.S.C. § 1692e(2)(A) by making false representations as to the character, amount, or legal status of the deficiency balance it claims Goodwyn owes; (2) 15 U.S.C. § 1692e(8) by communicating or threatening to communicate to persons credit information about Goodwyn which is known or should be known to be false; (3) 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect an alleged deficiency balance and to obtain other information from Goodwyn; (4) 15 U.S.C. § 1692f(1)

by using unfair or unconscionable means to collect or attempt to collect an alleged deficiency balance which Goodwyn does not owe; and (5) 15 U.S.C. § 1692g(b) by failing to provide Goodwyn with proper verification of the debt it alleges she owes. United Recovery argues that Goodwyn's § 1692e(2)(A), § 1692e(10), and § 1692f(1) claims are dependent on Goodwyn showing she did not owe the deficiency balance, and fail since the debt was valid.  But since the Court finds the debt was not valid, summary judgment is denied as to those claims.

> A.   15 U.S.C. § 1692e(8)

Section 1692e(8) of the Fair Debt Collection Practices Act prohibits communicating or threatening to communicate credit information that is known or should be known to be false. Goodwyn argues that United Recovery indirectly communicated her credit information to a credit reporting agency when United Recovery obtained a copy of Goodwyn's credit report and used the telephone numbers from the report to attempt to collect on her debt.  The Court is not convinced that simply obtaining telephone numbers from a credit bureau constitutes communicating "credit information."  Goodwyn pointed to no evidence that United Recovery conveyed any information to a credit reporting agency regarding a debt it knew was false, and she cited no authority supporting her assertion that requesting information *from* a credit reporting agency constitutes communicating credit

information *to* a credit reporting agency.   United Recovery is therefore entitled to summary judgment on this claim.

B.   15 U.S.C. § 1692g(b)

Section 1692g(b) of the Fair Debt Collection Practices Act requires that when a debt collector receives notice from a consumer disputing her debt, the debt collector must "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt," and provide a copy of the verification to the consumer.   Goodwyn argues that United Recovery's verification was not satisfactory. The Fair Debt Collection Practices Act does not define what constitutes proper "verification."   A number of courts have adopted the Fourth Circuit's standard: "verification of a debt involves nothing more than that debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; a debt collector is not required to keep detailed files of the alleged debt." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999).   "There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt." *Id.*

When United Recovery received Goodwyn's dispute letter, it contacted Capital One regarding the dispute.   In response, Capital One sent documentation of the debt to United Recovery. That documentation stated the account number and contained a

15

calculation of the deficiency balance, which matched the amount United Recovery sought to collect. Based on the documentation, United Recovery confirmed the amount of the debt, to whom it was owed, and by whom, and sent that information to Goodwyn with supporting documentation. United Recovery thus satisfied its obligations under *Chaudhry*. *See Chaudhry,* 174 F.3d at 406 ("[Collector] restated the amount of the inspection fees and indicated that the amounts were correct. Nothing more is required."); *cf. Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC,* 758 F.3d 777, 785-86 (6th Cir. 2014) (per curiam) (noting that verification must "provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation").

Goodwyn argues that the verification in *Chaudhry* provided more information than United Recovery provided her, including a transaction summary that actually confirmed the amount of the debt. United Recovery's letter, by contrast, did not include a transaction summary because Capital One had not yet provided one to United Recovery. Still, the information United Recovery did send Goodwyn, including the deficiency balance calculation, provided Goodwyn "with notice of how and when the debt was originally incurred or other sufficient notice from which [she] could sufficiently dispute the payment obligation." *Haddad*, 758

F.3d at 785-86.   Goodwyn knew what Defendants claimed she owed—she just disagreed that she owed it.   As such, United Recovery is entitled to summary judgment on this claim.

## IV.   Breach of Contract, Conversion, and Negligence Claims

Given that Goodwyn did not owe the debt and yet Defendants pursued collection of it, including the repossession of the car, a reasonable jury could conclude that Defendant Capital One breached its contract with Goodwyn and converted her property. A reasonable juror could also find that both Capital One and United Recovery are liable for negligence.   Defendants' summary judgment motions as to these claims are thus denied.

## V.   Georgia Fair Business Practices Act Claim

Capital One seeks summary judgment on Goodwyn's Georgia Fair Business Practices Act claim.   O.C.G.A. § 10-1-393(a) makes unlawful "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."   Private actions are authorized under the Act "so long as the alleged violation involves the breach of a duty owed to the consuming public in general and therefore has at least some potential impact on the consumer marketplace."   *Johnson v. GAPVT Motors, Inc.*, 292 Ga. App. 79, 84, 663 S.E.2d 779, 784 (2008).   "The act does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction."   *Id.*

17

Capital One argues that Goodwyn's Fair Business Practices Act claim is based on a private transaction that has no impact on the consuming public generally. It contends that the claim is essentially a breach of contract claim that only involved "an agreement between the parties and did not involve the introduction of any act or practice into the stream of commerce." *Burdakin v. Hub Motor Co.*, 183 Ga App 90, 90, 357 S.E.2d 839, 841 (1987). *Burdakin* held that the Act did not apply to the negligent repair of a single vehicle when the body shop represented that the vehicle had been properly repaired when it had not.

Goodwyn argues that Capital One's deceptive practice of collecting on paid-off debt reasonably has potential to harm the general consuming public. *See Garner v. Academy Collection Serv. Inc*, No. 3:04-CV-93-JTC, 2005 WL 643680, at *7-*9 (N.D. Ga. Mar. 11, 2005) ("If Capital One misrepresent[s] consumers' financial indebtedness to consumers and others, negligently account[s] for or process[es] consumers' payments in credit card accounts, or falsely reports consumers' credit histories, it is no stretch to imagine the potential adverse effect on the consumer marketplace and the economy in general."). Goodwyn produced sufficient evidence to create a genuine factual dispute as to whether Capital One's alleged actions would harm the

18

consuming public. Granting summary judgment on this basis is therefore inappropriate.

## VI.  Georgia RICO Claim

Defendants argue that Goodwyn's Georgia RICO claims fail. Georgia RICO makes it "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). A plaintiff shows racketeering activity by showing "that the defendant committed predicate offenses . . . at least twice." *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1293 (11th Cir. 2006) (per curiam).  Defendants correctly argue that Goodwyn's RICO claim fails because they did not possess the intent required for her to prove the predicate offenses.

Goodwyn identified four alleged crimes serving as predicate acts to support her Georgia RICO claim: (1) theft by taking, O.C.G.A. § 16-8-2; (2) theft by conversion, O.C.G.A. § 16-8-4; (3) mail fraud, 18 U.S.C. § 1341; and (4) wire fraud, 18 U.S.C. § 1343.  These are specific intent crimes requiring Capital One to exhibit intent to commit a particular act toward a particular purpose. *See Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1227 (11th Cir. 2014); *Brown v. State*, 302 Ga. App. 641, 643, 692

19

S.E.2d 9, 11 (2010); *Calabro v. Liberty Mut. Fire Ins. Co.*, 253 Ga. App. 96, 97, 557 S.E.2d 427, 429 (2001).

In *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1243 (11th Cir. 2013) (per curiam), a case dealing with the predicate act of attempt to commit theft by deception, the defendant corporation showed that it sent letters demanding payment to the plaintiff because of a clerical error, not with intent to deceive the plaintiff into paying money he did not owe.   The plaintiff did not produce evidence to rebut that showing.   The plaintiff argued that intent could be inferred because the corporation sent the letters seeking payment after its attorney should have known that the plaintiff did not owe any money.   The court rejected that argument and found that to survive summary judgment, the plaintiff would have had to present evidence that an employee of the defendant "acted with specific intent to commit theft by deception."   *Id.* at 1244. Here, there is no evidence that any of Defendants' employees maintained specific intent to harm Goodwyn.   At most, the record shows that Defendants' employees were wrong in their interpretation of bankruptcy law or careless in checking their records. As such, Goodwyn's Georgia RICO claims fail.

**VII. Intentional Infliction of Emotional Distress Claim**

To establish an intentional infliction of emotional distress claim, a plaintiff must show that (1) the defendant's

conduct is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is "a causal connection between the wrongful conduct and the emotional distress;" and (4) the emotional distress is severe. *United Parcel Serv. v. Moore*, 238 Ga. App. 376, 377, 519 S.E.2d 15, 17 (1999). Goodwyn's intentional infliction of emotional distress claim fails because Defendants' conduct was not extreme or outrageous.

Extreme and outrageous conduct "must be so serious as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." *Id.* The conduct "must go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Defendants argue that there is no evidence they intentionally or recklessly sought to harm Goodwyn in their handling of her account. They point to a case finding that a wrongful foreclosure was not extreme or outrageous given that there was some evidence that the defendant's security interest in the property had not been validly extinguished. *Ingram v. JIK Realty Co., Inc.*, 199 Ga. App. 335, 337, 404 S.E.2d 802, 805 (1991). Defendants argue that repossessing Goodwyn's vehicle is similarly not outrageous because there is some evidence that she did not pay off her debt during bankruptcy—that is, the lack of a discharge gave them reason to believe Goodwyn's debt was not

extinguished.  "Sharp or sloppy business practices . . . are not generally considered as going beyond all reasonable bounds of decency as to be utterly intolerable in a civilized community." *Moore,* 238 Ga. App. at 377, 519 S.E.2d at 17.  So while Defendants may have been wrong and careless in their handling of Goodwyn's account, the allegations do not rise to the level of supporting intentional infliction of emotional distress claims and summary judgment is therefore appropriate.

## CONCLUSION

Defendants' Motions for Summary Judgment (ECF Nos. 45 & 49) are granted in part and denied in part.  Because the Court finds that Goodwyn did not owe a debt after completion of her Chapter 13 bankruptcy, summary judgment is denied as to her breach of contract and conversion claims.  Summary judgment is also denied as to her negligence claims and her claims under the Fair Credit Reporting Act; sections 1692e(2)(a), 1692e(10), and 1692f(1) of the Fair Debt Collection Practices Act; and the Georgia Fair Business Practices Act.  Summary judgment is granted as to Goodwyn's claims for intentional infliction of emotional distress, violation of Georgia RICO, and violation of 15 U.S.C. §§ 1692e(8) and 1692g(b).

## CERTIFICATION FOR INTERLOCUTORY APPEAL

Due to the unusual procedural posture of this case, Capital One has already filed a motion to certify this Court's partial

22

denial of its motion for summary judgment for interlocutory appeal under 28 U.S.C. § 1292(b). The Court actually issued an oral ruling denying in part and granting in part Defendants' summary judgment motions at the final pretrial conference on August 6, 2015 and indicated that a written order would be forthcoming. At the pretrial conference, Capital One asked that the Court certify for immediate interlocutory appeal that part of the Order denying summary judgment. The Court stated that it did not find immediate appellate review warranted unless Capital One could demonstrate that by going to trial Capital One would be waiving its right to maintain that it is not liable as a matter of law as outlined in its summary judgment motion. The Court provided Capital One with an opportunity to brief the issue but went ahead and set the case down for jury trial to begin on September 28, 2015. Capital One filed the present motion for immediate interlocutory appeal (ECF No. 83), asking the Court to reconsider its previous oral statement that it did not find an immediate appeal appropriate. After further reflection and consideration of the parties' briefs, the Court reconsiders its previous decision regarding the propriety of an immediate interlocutory appeal.[3]

---

[3] No one wants to be wrong, and fewer of us are willing to admit that we were wrong. But compounding one error with another is worse than having committed the first one. Reconsideration is sometimes warranted. This is one of those times.

A court should only certify a case for interlocutory appeal if all three requirements of § 1292(b) are met: (1) the "order involves a controlling question of law," (2) there is "substantial ground for difference of opinion" on the question of law, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  The key issue presented by Capital One's motion for summary judgment is whether Goodwyn owed the debt in question.  The resolution of that issue presents two pure legal questions—(1)whether Capital One accepted Goodwyn's Chapter 13 plan by not making an affirmative objection to the plan (but instead relying on its proof of claim for the full amount of the claim) and by receiving payments under the plan which was approved by the bankruptcy judge and was successfully completed by Goodwyn; and (2)whether such acceptance extinguished Goodwyn's debt to Capital One upon completion of the plan even though Goodwyn did not receive a formal discharge because she was not eligible for discharge due to a prior Chapter 7 bankruptcy.  Thus, it is clear that the Court's Order involves one or more controlling questions of law.

The Court also finds that these purely legal issues have not been decided by the Eleventh Circuit, nor by any other Court as far as this Court's research has been able to determine.  The Court further finds that legitimate arguments exist on both

sides of these issues.  The Court is satisfied that when issues of first impression are presented for which legitimate arguments exist on both sides, then a substantial ground for difference of opinion exists for purposes of certifying an Order as appropriate for immediate interlocutory appeal.

As to whether an immediate appeal will materially advance the ultimate termination of the litigation depends on how the Court of Appeals resolves the legal issues previously described. If the Court of Appeals disagrees with this Court's ruling and finds that Goodwyn's debt was not extinguished based on what happened during the administration of the Chapter 13 plan, then Capital One and the other Defendant in this action are likely entitled to judgment as a matter of law as to all claims asserted in this action.  All of Goodwyn's claims depend on whether she owed the debt.  Whether she owed the debt depends on whether it was extinguished because of the Chapter 13 bankruptcy proceeding.  If it was not extinguished, Defendants likely had the right to do what they did.  Affirmance of this Court's Order by the Court of Appeals would also likely have a material impact on the progression of this litigation.  If the Court of Appeals affirms this Court's Order, then it is likely that Goodwyn would be entitled to judgment as a matter of law that she did not owe the debt, which would establish de facto liability on some of Goodwyn's claims insofar as it will be established that

Defendants pursued a debt that was not owed. Based on the foregoing, the Court finds that an immediate appeal would materially advance the ultimate termination of this litigation.

Finding that the requirements for an immediate interlocutory appeal have been met, the Court certifies this Order for interlocutory appeal. The Court further finds that a stay of the proceedings in this Court pending a decision by the Court of Appeals on Capital One's application for an immediate interlocutory appeal is appropriate. The Court is confident that the Court of Appeals will act expeditiously on this application, and if it is denied, the Court will be prepared to try this case without significant delay. If the Court of Appeals decides to allow the interlocutory appeal, then that of course will result in more substantial delay, but the granting of the application for immediate appeal would mean that the Court of Appeals deems an immediate appeal appropriate and any delay caused by it to be warranted. Accordingly, the trial previously scheduled to begin on September 28, 2015 is hereby canceled.

IT IS SO ORDERED, this 28th day of August, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA